IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON

**SAMUEL PAUL RANSON,**

      **Plaintiff,**

v.                                                                Case No. 3:17-cv-01547

**WESTERN REGIONAL JAIL,**
**JOSHUA WADE HUGHES, and**
**NURSE JANE DOE,**

      **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). Pending before the court are a Motion to Dismiss filed by the Western Regional Jail (ECF No. 9) and a Motion to Dismiss filed by Johsua Wade Hughes (ECF No. 19).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The plaintiff filed his initial Complaint on March 7, 2017. (ECF No. 2). However, this matter is now proceeding on the plaintiff's Amended Complaint (ECF No. 7), which alleges that the defendants failed to ensure that the plaintiff, who had undergone penile surgery prior to his incarceration, was taken to a follow-up appointment with his outside surgeon, and that such failure has resulted in permanent scarring and possible impotence.

On April 18, 2017, the Western Regional Jail ("WRJ") filed a Motion to Dismiss (ECF No. 9) and Memorandum of Law in support thereof (ECF No. 11), asserting that the WRJ is not a person that is suable under 42 U.S.C. § 1983 and, as an arm of the State of West Virginia, is further immune from any claim for monetary damages filed in federal court under the Eleventh Amendment of the United States Constitution.  The motion documents further assert that the Complaint should be dismissed, pursuant to 42 U.S.C. § 1997e(a) and West Virginia Code § 25-1A-2(c), because plaintiff failed to properly exhaust the available administrative remedies prior to filing this civil action, and because the Amended Complaint fails to state any plausible claim for relief.

On June 12, 2017, defendant Joshua Wade Hughes (hereinafter "Mr. Hughes") filed a Motion to Dismiss (ECF No. 19) and a Memorandum of Law in support thereof (ECF No. 20), asserting that the plaintiff failed to exhaust the required administrative remedies prior to filing suit, failed to comply with the requirements of the West Virginia Medical Professional Liability Act, and that the Amended Complaint fails to state a plausible claim under 42 U.S.C. § 1983 against Mr. Hughes or any 0ther medical provider at the WRJ.

The plaintiff has responded to both Motions to Dismiss (ECF Nos. 13 and 24).  His responses focus on the defendants' exhaustion defense, stating that he did file a grievance concerning this issue and was told that a follow-up appointment had been made for him, but he was never taken to the appointment.  In particular, the plaintiff's Response to Mr. Hughes' Motion to Dismiss states as follows:

> You must understand that when I was booked into Western Regional Jail I was placed in the Medical Unit because of the stitches in my penis from surgery.  After no response to my requests, the grievance was filed and at that time I was told that an appointment had been made with Dr. Jenkins [sic; Jenson] but I was never transported there for that appointment.

2

> There is a kiosk in each pod, all correspondences are made through this system, including the grievance process so there is record of these correspondences. When I received no response I filed this lawsuit and was moved out of Western Regional Jail within days of Captain Savila receiving notice of this suit, at that time on April 7, 2017, it was over two months past the timeframe of removing the stitches and was permanently scarred.
>
> Furthermore, when I was moved on April 7, 2017, I was no longer connected to the kiosk and therefore I feel I was pushed out in hopes that Western Regional Jail's negligence would simply be forgotten.

(ECF No. 24 at 1-2).

Because the status of the plaintiff's attempts to exhaust his administrative remedies was unclear from the face of the Amended Complaint and motion documents, on January 23, 2018, the undersigned conducted a hearing on the Motions to Dismiss. The plaintiff participated in the hearing by telephone from the Salem Correctional Center, a West Virginia Division of Corrections ("WVDOC") facility, where he is now incarcerated.

During the hearing, the plaintiff clarified that he was incarcerated at the WRJ from January 13, 2017 to March 23, 2017, when he was transferred to the Stevens Correctional Center, a WVDOC facility located in Welch, West Virginia. He further stated that he had penile surgery on either January 3 or 4, 2017, prior to his incarceration at the WRJ, and that he was scheduled for a follow-up appointment with his urologist on January 26, 2017.

The plaintiff further stated that, upon booking at the WRJ, he was placed in the Medical Unit and advised by Mr. Hughes, the nurse who conducted his booking, that he had undergone surgery, had stitches, and was scheduled for a follow-up appointment with his urologist. The plaintiff further stated that he repeatedly asked Mr. Hughes and other nurses whom he saw on "med pass" about his appointment and advised them that he was concerned that the surgical site was infected and "rotted out." He further stated that it was getting harder to urinate.

The plaintiff further stated that he subsequently filed a grievance and ultimately received a response that an appointment had been scheduled for him, but he was told that, for security reasons, he could not know when the appointment was scheduled. However, the plaintiff was not taken to any appointment while he was incarcerated at the WRJ. The plaintiff further stated that, because two months had passed without being taken to see his urologist, he filed his lawsuit. He added that he was subsequently moved to a WVDOC facility where he had no further access to the kiosk used for the grievance process at the WRJ.

Also during the hearing, Lacy B. Browning, counsel for the WRJ, advised the court that the kiosk system now used for completion of the grievance process was installed at the regional jails in September of 2014, and that all staff and inmates in custody at that time were trained on how to use the kiosk. She further stated all inmates who have come into the regional jail after that time are allegedly shown how to use the kiosk upon booking. The plaintiff denied receiving any training on the use of the kiosk. Nevertheless, he did use the kiosk to file the grievance at issue herein.

Anne Liles O'Hare, counsel for defendant Hughes, also discussed her knowledge of the treatment the plaintiff received while at the WRJ. She stated that the plaintiff was seen by several qualified medical personnel, and that the records demonstrate that the plaintiff had absorbable sutures, which were not required to be removed. The plaintiff responded that the medical providers he saw at the WRJ refused to treat him, stating that he needed to go back to the doctor who performed the surgery.

Ms. O'Hare further stated that the plaintiff was scheduled for an appointment with Dr. Jenson (the urologist who performed his surgery) on March 10, 2017, but did not appear for that appointment. Ms. O'Hare was uncertain why the plaintiff was not taken

4

to the appointment on that date. Ms. O'Hare further stated that she learned that the plaintiff was also scheduled to see Dr. Jenson on April 21, 2017, after he was moved to WVDOC custody, but he also failed to appear for that appointment. The plaintiff asserted that he has not received any treatment for this issue since he left the WRJ.

## **STANDARD OF REVIEW**

Pro se complaints are held to less stringent standards than those drafted by attorneys, and the court is obliged to construe liberally such complaints. However, in *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a civil rights case. The Court wrote:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted). Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. * * *
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.

5

> While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

556 U.S. at 678-679.

## ANALYSIS

### A. The plaintiff failed to exhaust his administrative remedies prior to filing his Complaint.

The defendants assert that this civil action must be dismissed because the plaintiff failed to exhaust the available administrative remedies prior to filing this lawsuit. The undersigned will address this threshold issue before turning to other grounds for dismissal raised by each defendant.

Both defendants' Memoranda of Law address the requirements of the West Virginia Prison Litigation Reform Act ("WVPLRA"), contained in West Virginia Code § 25-1A-2, mandating that an inmate "may not bring a civil action regarding an ordinary administrative remedy until the procedures promulgated by the agency have been exhausted." W. Va. Code § 25-1A-2(c). (ECF No. 11 at 7; ECF No. 20 at 4). Mr. Hughes' Memorandum of Law further asserts that "an ordinary administrative remedy" includes complaints concerning health care. (*Id.* at 4-5) (citing W. Va. Code § 25-1A-2(a)). (ECF No. 20 at 4).

Additionally, as addressed by the WRJ's motion, to the extent that the plaintiff's Amended Complaint can be considered to be raising any federal constitutional claim, such as a claim of deliberate indifference to a serious medical need under the Eighth or Fourteenth Amendment to the United States Constitution, section 1997e(a) of the federal Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), which requires exhaustion of available administrative remedies before an action may be filed under 42 U.S.C. § 1983,

is also applicable herein.  (ECF No. 11 at 7).  Thus, "prior to filing an action in federal court, 'a prisoner must have utilized all available remedies in accordance with the applicable procedural rules,' so that prison officials have been given an opportunity to address the claim administratively." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)).  (*Id.* at 8).

The WRJ, where the plaintiff was incarcerated at the time of the facts giving rise to this civil action, is a facility operated by the West Virginia Regional Jail and Correctional Facility Authority ("WVRJCFA"), which, according to the defendants has a grievance procedure that is outlined in a handbook of Inmate Rules and Procedures that is distributed to each inmate.  As noted in both defendants' Memoranda of Law, the United States District Court for the Northern District of West Virginia has summarized the WVRJCFA's grievance process as follows:

> Under this procedure, inmates must first submit a grievance to the Administrator of the facility in which they are confined. Upon receipt of the grievance, the Administrator may reject the grievance if it appears on its face to have been filed in bad faith, or if other administrative procedures exist that have not been utilized. If the grievance is rejected, the Administrator must advise the inmate of the rejection. If the grievance is not rejected, the Administrator may assign a staff member to investigate the complaint. Such staff is then required to submit a written report within forty-eight (48) hours. Within two days of receipt of the written report, the Administrator must provide a written decision which identifies the action taken, the reasons for the action, and the procedures that must be followed to properly appeal the decision. If the Administrator's response is unfavorable, the inmate may appeal to the Chief of Operation within five days of the receipt of the Administrator's decision. Upon receipt of an appeal, the Chief of Operations must immediately direct the Administrator to forward copies of all information relating to the inmate's grievance within two business days. The Chief of Operations may direct an investigation of the report be conducted and a written report be submitted within 15 days. Within 10 days of receiving all of the information related to the grievance, the Chief of Operations must provide a written decision which identifies the corrective action taken or the reasons for denying the grievance. If the Chief of Operations' response is unfavorable, the inmate may appeal to the Office of the Executive Director within five days of receipt of the Chief of

> Operations' response. To do so, the inmate must mail to the Executive Director, copies of the original complaint and all of the responses thereto. The Office of the Executive Director must respond to an inmate's appeal within 10 days of receiving all the information. Unless the inmate has been notified of an extension of time for a response, the inmate may move to the next stage of the grievance process if the inmate does not receive a response at the expiration of the time limit at any stage of the process. The grievance process must be concluded within 60 days, inclusive of any extensions.

*Chase v. Trent*, No. 1:11CV108, 2012 WL 5845361, at *4 (N.D. W. Va. Oct. 16, 2012) (Kaull, M.J.), *report and recommendation adopted*, No. 1:11CV108, 2012 WL 5845219 (N.D. W. Va. Nov. 19, 2012) (Keeley, J). (ECF No. 11 at 8-9; ECF No. 20 at 4-6). During the motions hearing, counsel for the WRJ advised the court that it is her understanding that nothing in this process has been changed by the institution of the kiosk system.

The defendants emphasize that "administrative remedies are not exhausted until all three steps of the grievance process have been completed." (ECF No. 11 at 9; ECF No. 20 at 6). Prior to the hearing, Ms. Browning provided the court with a copy of two grievances filed by the plaintiff on the kiosk system that relate to the matters addressed in this civil action (*See* Court's Exhibit A attached hereto).

It appears from the grievance documents that the plaintiff initially filed a grievance concerning the failure to be taken to a follow-up appointment with his urologist on February 22, 2017. (Ex. A at 1). That grievance specifically stated as follows [spelling and spacing corrected]:

> I was supposed to go for a follow up apt within 3 weeks of being here. I told Josh my physitians [sic; physician's] name when I got here. I've been here almost 2 months and haven't heard anything. By not going to this apt I am probably now impotant [sic; impotent]. I wish to speak to the administrator.

(Ex. A at 1). However, the plaintiff did not immediately receive a response thereto. Thus, on February 28, 2017, he filed a second grievance stating that he had filed the prior

8

grievance and received no response. (*Id.* at 2). On March 1, 2017, the grievance was accepted and he received a response from Administrator King, then Administrator of the WRJ, stating "what is your problem I may have assigned it to someone." (*Id.*)

Then, on March 6, 2017, he received a response rejecting his February 22, 2017 grievance with the following response from the Medical Administrator:

> Mr. Ranson,
> Pleas obtain a nurse sick call from the medication nurse, complete form and return to medical staff. Thank You.

(Ex. A at 1). On that same date, the plaintiff "appealed" the response/rejection, stating "I have sent request after request with no answer. I talk to the nurse every day." (*Id.*) Apparently, on March 6, 2017, the plaintiff also mailed his initial Complaint to this court, having executed the same on February 24, 2017. (ECF No. 2 at 7-8, signature page showing execution on February 24, 2017, and envelope with postmark of March 6, 2017). The initial Complaint was received and docketed in this court on March 7, 2017. (*Id.*)

On March 8, 2017, the plaintiff's grievance appeal was accepted by the Medical Administrator, who responded as follows:

> Mr. Ranson,
> You have a follow up appointment scheduled.
> Thank you.

(Ex. A at 1). The undersigned notes that the response did not advise the plaintiff of the date or time of the appointment. As stated by counsel during the hearing, inmates are not informed of the specifics of outside appointment information for security reasons.

During the hearing, the plaintiff confirmed that he took no further action concerning that particular grievance because he thought he would be taken to the scheduled appointment; nor did he file any additional grievances concerning this issue.

Therefore, it is clear that the plaintiff failed to properly exhaust the available grievance procedures before filing his Complaint.

Despite the plaintiff's assertions that he received no training concerning the use of the kiosk, his statements and actions demonstrate that he was aware of the grievance process and that he used the kiosk to file and appeal a grievance, but failed to complete the grievance process prior to filing his Complaint. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff failed to properly exhaust the available administrative remedies prior to filing this civil action and, thus, this matter must be dismissed pursuant to 42 U.S.C. § 1997e(a) and W. Va. Code § 25-1A-2(c).

Nevertheless, should the presiding District Judge disagree with the undersigned's exhaustion analysis, there are other bases for the dismissal of the claims against each defendant, which the undersigned will address in turn.

### B. The WRJ is not a suable entity and is immune from liability for damages under the Eleventh Amendment.

To succeed with a claim brought under section 1983, a plaintiff must allege both a violation of a right secured by the Constitution or laws of the United States and that a person acting under color of state law committed the alleged violation. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011). The WRJ's asserts that, as an arm of the State of West Virginia, it is not a "person" suable under section 1983.

The Western Regional Jail is nothing more than a facility operated and controlled by the West Virginia Regional Jail and Correctional Facility Authority pursuant to West Virginia Code § 31-20-1a *et seq.* As a facility operated by the West Virginia Regional Jail

10

and Correctional Facility Authority, the Western Regional Jail has no separate existence and is entitled to the same immunity. *See Roach v. Burch*, 825 F. Supp. 116 (N.D. W.Va. June 28, 1993) (finding that the WVRJCFA is an "arm" or "alter ego" of the State and not a "person" for purposes of a claim for money damages under section 1983).

Furthermore, pursuant to the Eleventh Amendment to the United States Constitution, the power of the federal judiciary does not extend to suits by a citizen of one state against another, or to suits by a citizen against his or her own state. *Hans v. Louisiana*, 134 U.S. 1, 9 (1980). Absent waiver or consent, federal suits against a state by a citizen of that state or another state are prohibited by the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 199 (1985); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99-100 (1984). Thus, the Eleventh Amendment of the United States Constitution bars a suit in a federal court by private parties seeking to impose monetary liability upon a State or State officials, which may be paid from public funds in the state treasury. *Quern v. Jordan*, 440 U.S. 332, 337 (1979). Congress did not waive this sovereign immunity when it enacted section 1983 and the State of West Virginia has not consented to suit thereunder.

For these reasons, the undersigned proposes that the presiding District Judge **FIND** that the WRJ is immune from liability for monetary damages under the Eleventh Amendment and is not a person who can be sued under 42 U.S.C. § 1983. Accordingly, the plaintiff's claims against the WRJ must be dismissed.[1]

---

[1] Because the WRJ is not a suable entity, the undersigned finds it unnecessary to address the argument made in its motion that the Amended Complaint otherwise fails to state a claim upon which relief can be granted against the WRJ.

**C. The plaintiff has not complied with the West Virginia Medical Professional Liability Act.**

To the extent that the plaintiff is claiming negligence in the medical care rendered to him by Mr. Hughes or other medical personnel at the WRJ (*i.e.,* Nurse Jane Doe), his cause of action is governed by the West Virginia Medical Professional Liability Act ("MPLA"), W. Va. Code § 55-7B-1 *et seq.*, specifically, W. Va. Code § 55-7B-6(b), requiring pre-suit notification and a screening certificate of merit. *See Boggs v. Camden-Clark Memorial Hosp. Corp.*, 609 S.E.2d 917 (W. Va. 2004); *Davis v. Mound View Health Care, Inc.*, 640 S.E.2d 91 (W. Va. 2006). As noted in Mr. Hughes' Memorandum of Law, West Virginia Code § 55-7B-6 provides, in pertinent part, as follows:

> (a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section.
>
> (b) *At least thirty days prior to the filing of a medical professional liability action against a health care provider*, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia Rules of Evidence and *shall* state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A *separate screening certificate of merit must be provided* for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. . . .

W. Va. Code § 55-7B-6 (emphasis added in Hughes' brief). (ECF No. 20 at 8-9).

The MPLA defines "medical professional liability" as "any liability for damages resulting from the death or injury of a person for any tort or breach of contract based on

12

health care services rendered, or which should have been rendered, by a health care provider or health care facility to a patient." W. Va. Code § 55-7B-2(i). As recently noted by the Supreme Court of Appeals of West Virginia, "[w]here the alleged tortious acts or omissions are committed by a health care provider within the context of the rendering of 'health care' as defined by W. Va. Code § 55-7B-2(e), the Act applies regardless of how the claims have been pled." *Minnich v. MedExpress Urgent Care, Inc.-West Virginia*, 796 S.E.2d 642, 646 (2017) (quoting *Blankenship v. Ethicon, Inc.*, 656 S.E.2d 451, 453 (2007)).

Mr. Hughes' Memorandum of Law further asserts, "[n]owhere in his Amended Complaint does the plaintiff allege compliance with the mandatory notice and screening certificate of merit requirements of the MPLA." (ECF No. 20 at 9). Mr. Hughes further asserts that these requirements have been determined to be mandatory for medical malpractice or negligence claims filed in federal courts. *See Stanley v. United States*, 321 F. Supp.2d 805, 807 (N.D. W. Va. 2004); *see also Gaylor v. Dagher*, Case No. 2:10-cv-00258, 2011 WL 482834, 2011 U.S. Dist. LEXIS 12400 (S.D. W. Va., Jan. 14, 2011) (unpublished); *Motto v. Correctional Medical Services,* Case No. 5:06-cv-00163, 2007 WL 2897854, 2007 U.S. Dist. LEXIS 72436 (S.D. W. Va. Sept. 27, 2007) (unpublished decision). (*Id.* at 7-8).

The plaintiff has not disputed either the applicability of the MPLA to his case or his failure to comply with the MPLA requirements. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that dismissal of the plaintiff's allegations of medical negligence in the Amended Complaint is required because the plaintiff failed to meet the requirements of the MPLA, which clearly appear to apply to his negligence claim.

**D. The plaintiff has not stated a plausible federal constitutional claim.**

Mr. Hughes has also moved to dismiss the plaintiff's Amended Complaint on the basis that it fails to state a plausible claim of deliberate indifference to a serious medical need. The vehicle for such a claim is section 1983 of Title 42 of the United States Code, which provides in pertinent part:

> Every person, who under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress . . . .

42 U.S.C. § 1983. While not in itself a source of substantive rights, section 1983 provides a "method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To successfully establish a section 1983 claim, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)) [Emphasis added].

It is unclear whether the plaintiff was a pre-trial detainee or a convicted prisoner, at the time in question. If he was a pre-trial detainee, his constitutional claim concerning inadequate medical treatment arises, if at all, under the due process clause of the Fourteenth Amendment, and not under the Eighth Amendment prohibition against cruel and unusual punishment, which is applicable to convicted prisoners and was the standard addressed by Mr. Hughes in his motion. *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979); *Hill v. Nicodemus*, 979 F.2d 987, 990 (4th Cir. 1992). However, the inquiry under both

14

amendments is essentially analogous: whether the defendant exhibited deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Riley v. Dorton*, 115 F.3d 1159, 1166 (4th Cir. 1997), *overruled on other grounds by* Wilkins *v. Gaddy*, 559 U.S. 34 (2010). Thus, courts often rely upon Eighth Amendment precedent when analyzing such claims by pre-trial detainees.

Because PrimeCare Medical, Inc., Mr. Hughes' employer, is the contracted medical provider for the WVRJCFA, which is a state agency, the deliberate indifference standard is applicable to the conduct of both PrimeCare and its individual employees, who may be considered to be acting under color of state law. *West v. Atkins*, 487 U.S. 42 (1998). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990); *see also Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986) (collecting cases). "Serious medical needs" are those which have been diagnosed by a physician as mandating treatment or that are so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Gaudreault v. Munic. of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990).

> Deliberate indifference may be demonstrated by either actual intent or reckless disregard. *See Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985). A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position. *See id.* Nevertheless, mere negligence or malpractice does not violate the Eighth Amendment. *See Estelle*, 429 U.S. at 106.

*Miltier*, 896 F.2d at 851-852.

Mr. Hughes' Memorandum of Law asserts that the plaintiff's Amended Complaint neither pleads nor meets the legal threshold for a viable deliberate indifference claim.

15

(ECF No. 20 at 6-8). The plaintiff must demonstrate that a particular defendant subjectively responded with deliberate indifference to his serious medical need. *Wilson v. Seiter*, 501 U.S. 294, 297-99 (1991). Negligence is insufficient to state a federal constitutional claim. *See Wilson*, 501 U.S. at 305. Thus, a constitutional violation does not occur unless the medical provider's actions were "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 843, 851 (4th Cir. 1990). Further, a mere disagreement between the inmate and the health care provider over the type or extent of medical care is insufficient to establish deliberate indifference. Moreover, an inmate is not entitled to unqualified access to health care and treatment may be limited to what is medically necessary. *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977). In light of these factors, Mr. Hughes' Memorandum of Law asserts that:

> This case is about nothing more than a disagreement between Plaintiff Ranson and Nurse Hughes over the timeliness of a follow-up appointment with his urologist, following pre-incarceration surgery for priapism. As such his Complaint does not meet the threshold for a viable constitutional claim.

(*Id.* at 8). The plaintiff's response to Mr. Hughes' motion fails to address this argument.

The undersigned proposes that the presiding District Judge **FIND** that the plaintiff has not sufficiently alleged that the conduct of Mr. Hughes or any other medical provider at the WRJ rose to the high level of deliberate indifference to a serious medical need and, thus, the plaintiff's Amended Complaint fails to state a claim upon which relief can be granted under 42 U.S.C. § 1983.

## RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the Western Regional Jail's Motion to Dismiss (ECF

No.9) and Joshua Wade Hughes' Motion to Dismiss (ECF No. 19) and dismiss this civil action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, 42 U.S.C. § 1997e(a), W. Va. Code § 25-1A-2(c), and W. Va. Code § 55-7B-6.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985*); United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be served on the opposing party and Judge Chambers.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to the plaintiff and to transmit a copy to counsel of record.

January 25, 2018

Dwane L. Tinsley
United States Magistrate Judge

17